**NOT FOR PUBLICATION**

## In the
## United States Court of Appeals
## For the Eleventh Circuit

————————————

No. 22-13911

————————————

TENOR CAPITAL PARTNERS, LLC,

*Plaintiff-Counter Claimant-Appellee,*

*versus*

GUNBROKER.COM, LLC,

*Defendant-Counter Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-00613-TWT

————————————

Before NEWSOM, BRANCH, and LUCK, Circuit Judges.

LUCK, Circuit Judge:

GunBroker.com, LLC sued Tenor Capital Partners, LLC after it received financial-advisory and related finance-raising services from Tenor. Tenor countersued GunBroker for not paying for those services. Following cross-motions for summary judgment, a

motion for reconsideration filed by GunBroker, a motion for judgment as a matter of law filed by GunBroker, and a renewed motion for judgment as a matter of law filed by GunBroker, Tenor ultimately secured a $1.5 million verdict in its favor. GunBroker appeals several of the district court's orders.

After review, and with the benefit of oral argument, we reverse the district court's summary-judgment order to the extent it granted summary judgment on GunBroker's breach-of-fiduciary-duty claim, but we affirm the order to the extent it granted summary judgment on GunBroker's Georgia Securities Act claim. We also affirm the district court's order denying reconsideration of its summary judgment on GunBroker's Georgia Securities Act claim. Finally, we reverse the district court's order denying GunBroker's motion for judgment as a matter of law on Tenor's unjust-enrichment claim. We therefore affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL BACKROUND AND PROCEDURAL HISTORY

GunBroker is an online marketplace that allows users to buy and sell firearms. GunBroker hired Tenor, a financial firm, to help it establish an employee stock ownership plan (ESOP). By creating an ESOP, GunBroker would create a trust to buy its shares and hold them for the benefit of GunBroker employees, giving the employees retirement benefits at no cost to them.

GunBroker and Tenor entered into an agreement. Under the agreement, Tenor would perform "limited financial advisory

services" in three "stages."  At stage one, the "[a]nalysis and [s]truc-turing [s]tage," Tenor would advise GunBroker on the potential ESOP, including by performing a valuation of the company and identifying possible ways to finance the transaction.  At stage two, the "[f]inancing [r]aise [s]tage," Tenor would attempt to raise financing for the ESOP by reaching out to—and negotiating with—potential lenders.  Finally, at stage three, the "[c]losing [s]tage," Tenor would help close the ESOP transaction.  The agreement provided that Tenor would receive a separate fee for stage one and would only proceed to stage two if GunBroker authorized it to do so.

The agreement contained a few other provisions relevant to this appeal.  First, it provided that GunBroker had to pay Tenor a fee if GunBroker closed a transaction with a lender it found through Tenor within twelve months of terminating the agreement.  Second, the agreement had a severability clause stating that any provision's invalidity or unenforceability wouldn't affect the validity or enforceability of any other provision.  And third, the agreement said that "nothing in" it would "[b]e deemed to create a fiduciary or agency relationship" between GunBroker and Tenor.

The parties began with the first stage.  Tenor presented GunBroker with a financial analysis of a possible ESOP transaction and performed a valuation estimating that GunBroker was worth at least $180 million.  Tenor provided this advice, including the val-

uation and other financial analysis, without registering as an investment adviser with the Securities and Exchange Commission or the state of Georgia.

Based on Tenor's advice, GunBroker decided to proceed with the transaction and authorized Tenor to begin stage two. As part of its efforts to secure financing, Tenor distributed a financing memorandum to potential lenders that explained GunBroker's business and the proposed ESOP. This financing memorandum included the valuation and financial analysis Tenor performed at stage one. Tenor was eventually able to negotiate a term sheet with MGG Investment Group that provided financing of $70 million to help create the ESOP. GunBroker entered into a deal with MGG under the term sheet.

Then, the relationship between GunBroker and Tenor soured. Steve Urvan, GunBroker's owner, emailed one of Tenor's principals, Todd Butler, to ask about the fact that Tenor was not registered as an investment adviser either federally or in Georgia. Butler forwarded this email to a third person and said he didn't "plan to dignify it with a response." GunBroker then emailed the legal counsel that was advising it on the ESOP and told counsel that Tenor would no longer be involved in the transaction. In response, GunBroker's legal counsel withdrew from the representation. This exchange was relayed to Butler, and the next day he emailed Urvan to confirm the termination of Tenor and GunBroker's relationship.

While GunBroker tried to pursue the ESOP transaction without Tenor's help, it failed to secure a satisfactory deal. It abandoned the ESOP and negotiated a different non-ESOP financing agreement with MGG worth $65 million. Tenor learned about this financing agreement and demanded a payment of $1,050,000.00 under its agreement with GunBroker.

GunBroker then initiated this lawsuit against Tenor. The complaint alleged nine counts against Tenor, but only a few are relevant here. The first and third counts alleged that Tenor violated the Investment Advisers Act of 1940 and the Georgia Securities Act by acting as an unregistered investment adviser. GunBroker sought rescission of the agreement based on these claims. And the seventh count alleged that Tenor breached its fiduciary duties to GunBroker by manipulating its valuation to induce it to enter into an ESOP transaction that Tenor would profit from, by engaging in undisclosed side deals with third parties, and by failing to disclose that Tenor was not a registered investment adviser. Tenor asserted five counterclaims. Two are relevant in this appeal: a claim for attorney's fees and another for unjust enrichment for financing services provided under stage two of the agreement.

The parties then filed cross-motions for summary judgment on all claims. GunBroker argued that it was entitled to summary judgment on its claims under the Investment Advisers Act and the Georgia Securities Act because there was no genuine issue of material fact that Tenor acted as an unregistered investment adviser

when it performed a valuation of the company and advised Gun-Broker on whether to pursue an ESOP transaction. Tenor, in its motion, argued that it was entitled to summary judgment on the same claims because an ESOP adviser did not qualify as an investment adviser. It also argued that it was entitled to summary judgment on GunBroker's claim for breach of fiduciary duty because the agreement expressly disclaimed any fiduciary relationship.

GunBroker responded, as to its claim for breach of fiduciary duty, that Tenor was not entitled to summary judgment because the parties' agreement was void, so GunBroker could not rely on the disclaimer. It also argued that the Investment Advisers Act imposed fiduciary duties on Tenor in its capacity as an investment adviser under Georgia law because Butler held himself out as a lawyer.

The district court granted summary judgment on most of the claims. The district court explained that Tenor's stage-one services, including performing a valuation of GunBroker, were investment advice under the Investment Advisers Act and that Tenor acted as an unregistered investment adviser when it performed them. The district court therefore found that GunBroker was entitled to summary judgment on its claim under the Investment Advisers Act and to rescission of the agreement.

The district court then explained that Tenor was entitled to summary judgment on GunBroker's Georgia Securities Act claim for a reason not raised by any party: Tenor was a "federal covered investment adviser" under the Georgia Securities Act and was

therefore exempt from registration.   Finally, the district court granted summary judgment for Tenor on GunBroker's breach-of-fiduciary-duty claim based on the fiduciary-duty disclaimer in the agreement.  It did not address GunBroker's argument that the Investment Advisers Act imposed fiduciary duties on Tenor.  So, after summary judgment only two claims remained:  Tenor's counter-claims for unjust enrichment and attorney's fees.

GunBroker moved for reconsideration of the district court's summary judgment for Tenor on the Georgia Securities Act claim. GunBroker argued that the district court misapplied Georgia law in finding that Tenor was a federal covered investment adviser because the Georgia Securities Act required Tenor to register with the Securities and Exchange Commission to qualify as one.  Tenor responded that even if the exemption for federal covered investment advisers didn't apply, another exemption did:  Tenor wasn't required to register if it had fewer than six clients in Georgia during the twelve months before it entered into its agreement with Gun-Broker.  Tenor attached a declaration from one of its principals that stated it had only four Georgia clients other than GunBroker during that time.

The district court denied the motion for reconsideration.  It agreed with GunBroker that Tenor needed to register with the Commission to qualify as a federal covered investment adviser. But the district court also agreed with Tenor that it was exempt from the registration requirement because it had fewer than six

Georgia clients in the twelve months before the parties entered into their agreement.

Before trial, Tenor moved to realign the parties to designate itself as the plaintiff because the only remaining claims were its counterclaims. The district court granted the motion over Gun-Broker's objection.

To support Tenor's unjust-enrichment claim, Butler testified at trial about Tenor's finance-raising efforts. He confirmed that during stage two Tenor sent the financing memorandum containing the valuation to every lender it identified as potentially interested in the transaction.

GunBroker moved for judgment as a matter of law on Tenor's unjust-enrichment claim. It argued that Georgia law didn't allow Tenor to maintain a claim for unjust enrichment to recover the value of services performed under a contract that was void as against public policy. Tenor countered that because it did not act as an investment adviser during its stage-two services, which formed the basis for its unjust-enrichment claim, Georgia law allowed it to pursue the claim despite the fact that its stage-one services rendered the contract void. Before the case was submitted to the jury, GunBroker expanded on its motion for judgment as a matter of law and argued that Tenor's unjust-enrichment claim failed because Tenor's efforts to secure financing at stage two necessarily depended on the illegal investment advice and valuation provided at stage one. The district court reserved ruling on the motion.

★ ★ ★

The jury rejected Tenor's request for attorney's fees but returned a $1.5 million verdict in Tenor's favor on its unjust-enrichment claim. Post-verdict, the district court denied GunBroker's motion for judgment as a matter of law. It concluded that Georgia law allowed it to sever Tenor's stage-two services from the stage-one services because the evidence at trial showed that, at stage two, Tenor only sought financing and did not offer any unlawful investment advice.

## STANDARDS OF REVIEW

We review de novo a district court's summary judgment, "viewing the evidence and drawing all inferences in the light most favorable to the non-moving party." *Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 854 (11th Cir. 2023). We review for abuse of discretion the denial of a motion for reconsideration. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007). And "[w]e review de novo the denial of a motion for judgment as a matter of law . . . , viewing the evidence in the light most favorable to the non-moving party." *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1242 (11th Cir. 2021).

## DISCUSSION

We address three claims on appeal. First, we consider the district court's summary judgment for Tenor on GunBroker's breach-of-fiduciary-duty claim. Next, we discuss the district court's summary judgment for Tenor on GunBroker's Georgia Securities Act claim and related motion for reconsideration. And finally, we

review the denial of GunBroker's motion for judgment as a matter of law on Tenor's unjust-enrichment claim.

### A.  GunBroker's Breach-of-Fiduciary-Duty Claim

GunBroker argues that the district court erred in concluding that there was no fiduciary relationship between the parties based on the disclaimer in the agreement and therefore erred when it granted Tenor summary judgment on GunBroker's breach-of-fiduciary-duty claim.  Tenor, GunBroker contends, owed fiduciary duties under the Investment Advisers Act because Tenor performed services as an investment adviser.  We agree with GunBroker that Tenor owed a fiduciary duty under the Investment Advisers Act.

A claim for breach of fiduciary duty under Georgia law has three elements:  "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."  *Ray v. Hadaway*, 811 S.E.2d 80, 84 (Ga. Ct. App. 2018) (quotation omitted).  A fiduciary relationship can arise "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." *Douglas v. Bigley*, 628 S.E.2d 199, 204 (Ga. Ct. App. 2006) (quoting O.C.G.A. § 23-2-58).  "Such relationship may be created by law, contract, or the facts of a particular case."  *Id.*  The relevant duty here was created by law—the Investment Advisers Act.

Section 206 of the Investment Advisers Act, 15 U.S.C. section 80b-6, "broadly proscribes fraudulent practices by investment

advisers" and "establishes 'federal fiduciary standards' to govern the conduct of investment advisers." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 16, 17 (1979) (quoting *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 471 n.11 (1977)). The fiduciary duties owed by an investment adviser include "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients." *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 194 (1963) (internal quotation marks and footnote call numbers omitted). The Investment Advisers Act imposes these duties on any person that meets the definition of an investment advisor, regardless of whether that person is registered. *See* 15 U.S.C. § 80b-6 (imposing the duties on "any investment adviser"); *see also Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006) (stating that section 206 applies to "any investment adviser—registered or not").

At summary judgment, the district court concluded that no fiduciary relationship existed because "GunBroker agreed at the outset that it had no fiduciary relationship with Tenor" when it signed the agreement, which contained a disclaimer that "[n]othing in this [a]greement . . . shall be deemed to create a fiduciary or agency relationship between Tenor and [GunBroker]." If a fiduciary relationship "can be created by contract," the district court reasoned, "it can be disclaimed by contract."

But the fiduciary relationship between Tenor and GunBroker was created by law, not by contract. For summary judgment purposes, the district court found no genuine dispute that Tenor

acted as an investment adviser within the meaning of the Investment Advisers Act. Tenor doesn't challenge that ruling on appeal. It doesn't dispute that the Investment Advisers Act imposes a statutory fiduciary duty on investment advisers. And any compliance obligations created by the Investment Advisers Act cannot be waived by contract. *See* 15 U.S.C. § 80b-15(a) (providing that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Investment Advisers Act] . . . shall be void"). So, because Tenor acted as an investment adviser, it owed fiduciary duties to GunBroker under the Investment Advisers Act even if the agreement itself did not create any new fiduciary duties.

Georgia courts often look to federal law to determine whether a duty has been created "by law." For example, in *Wells Fargo Bank, N.A. v. Jenkins*, the Supreme Court of Georgia considered whether a provision of the federal Gramm–Leach–Bliley Act imposed a duty that could support a Georgia negligence claim under Georgia Code section 51–1–6. *See* 744 S.E.2d 686, 688 (Ga. 2013). The Supreme Court of Georgia concluded that it did not, but only because the federal provision was a policy statement and did not describe "a legal duty with some ascertainable standard of conduct." *Id.*; *see also PNC Fin. Servs. Grp., Inc. v. Gibson*, 901 S.E.2d 331, 339 (Ga. Ct. App. 2024) (discussing whether fiduciary relationship was implied by registration exemption in the Securities and Exchange Act); *McLain v. Mariner Health Care, Inc.*, 631 S.E.2d 435, 437 (Ga. Ct. App. 2006) ("Generally, a plaintiff may assert a claim

of negligence per se arising from violations of federal or state statutes . . . .”); *Dupree v. Keller Indus., Inc.*, 404 S.E.2d 291, 294 (Ga. Ct. App. 1991) (holding that duties imposed by Occupational Safety and Health Administration regulations may supply the legal duty required to maintain a claim under Georgia Code section 51–1–6).

Here, the Investment Advisers Act imposes “an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients,” *Cap. Gains*, 375 U.S. at 194, an ascertainable standard of fiduciary conduct entirely consistent with Georgia law, *see* O.C.G.A. § 23-2-58 (defining a “confidential” relationship as one “where . . . the law requires the utmost good faith, such as the relationship between partners; principal and agent; . . . and similar fiduciary relationships”).  Tenor points to no authority saying that the “law” creating the fiduciary relationship can’t be a federal one. *See Douglas*, 628 S.E.2d at 205.  And we see no reason why that wouldn’t be the case here as well.  Therefore, the district court erred when it determined Tenor did not owe GunBroker a fiduciary duty and granted summary judgment on this claim.

### B.  GunBroker’s Georgia Securities Act Claim

Next, GunBroker challenges the district court’s summary judgment for Tenor on GunBroker’s claim under the Georgia Securities Act.  Recall that, after the motion for reconsideration, the district court explained that Tenor was exempt from state registration because it had fewer than six Georgia clients.  On appeal, Gun-

14                    Opinion of the Court                    22-13911

Broker argues that an exemption from Georgia's registration requirements is an affirmative defense that Tenor waived by not pleading it in its answer.  And GunBroker contends the district court shouldn't have considered this exemption because Tenor never disclosed an intention to rely on it during discovery and raised it only in response to a motion for reconsideration.  We find no error in the district court's consideration of the exemption.

The Georgia Securities Act provides that "[i]t is unlawful for a person to transact business in [Georgia] as an investment adviser unless the person is registered . . . as an investment adviser or is exempt from registration as an investment adviser . . . ."  O.C.G.A. § 10-5-32(a).  An investment adviser is exempt from the registration requirement, for example, if "during the course of the preceding [twelve] months," he "had fewer than six clients in" Georgia.  GA. COMP. R. & REGS. 590-4-4.13(1)(b); *see also* O.C.G.A. § 10-5-32(b)(3).

A party generally must raise an affirmative defense in a responsive pleading.  *See* Fed. R. Civ. P. 8(c)(1).  "The Supreme Court has held that the purpose of [r]ule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it."  *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797 (11th Cir. 1989).  "Failure to plead an affirmative defense generally results in a waiver of that defense."  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010).  But "[a] court may consider an affirmative defense that did not appear in the answer, if the plaintiff has suffered no prejudice from the failure to raise the defense in a timely fashion."  *Miranda de Villalba v. Coutts & Co. (USA) Int'l*, 250 F.3d 1351, 1353 (11th

Cir. 2001).  "Thus, if a plaintiff receives notice of an affirmative de-fense by some means other than pleadings, 'the defendant's failure to comply with [r]ule 8(c) does not cause the plaintiff any preju-dice.'"  *Grant*, 885 F.2d at 797 (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)).  "When there is no prejudice, the trial court does not err by hearing evidence on the issue."  *Id.* (citing *Hassan*, 842 F.2d at 263).

GunBroker is correct that exemptions to federal securities laws often operate as affirmative defenses.  *See, e.g.*, *SEC v. GenAudio Inc.*, 32 F.4th 902, 939 (10th Cir. 2022) (noting that certain exemp-tions "can be asserted as affirmative defenses"); *Doran v. Petroleum Mgmt. Corp.*, 545 F.2d 893, 899 (5th Cir. 1977) ("The defendants do not contest the existence of the elements of plaintiff's prima facie case but raise an affirmative defense that the relevant transactions came within the exemption from registration . . . .").  But it's not clear that Georgia law similarly treats a registration exemption as one.  For now, we'll assume that it does because, even if the regis-tration exemption is an affirmative defense under Georgia law, the district court did not err in considering the client-count exemption.

Tenor raised the issue only after GunBroker moved the dis-trict court to reconsider its sua sponte determination that Tenor was exempt from registration as a federal covered investment ad-viser.  Tenor's response to GunBroker's motion for reconsideration was its first opportunity to brief the exemption issue after it had been raised.  Tenor then squarely addressed the issue and put Gun-

Broker on notice that it planned to rely on the exemption. Gun-Broker had an opportunity to respond to the client-count-exemption argument in its reply. Had the issue gone to trial, GunBroker would have had ample notice that Tenor intended to rely on the exemption. *See Grant*, 885 F.2d at 797–98 (finding that the plaintiff had adequate notice of an affirmative defense when the defendant raised it in a motion for summary judgment one month before trial). Because GunBroker had notice that Tenor was relying on this defense, the district court did not abuse its discretion in considering it even though it wasn't included in Tenor's answer or discovery responses.[1] *Id.*

Notably, GunBroker does not meaningfully dispute that the exemption applies here. GunBroker says there's a discrepancy between Tenor's declaration, which said Tenor had four clients in Georgia during the twelve months before the parties entered into their agreement, and the testimony at trial that Tenor serves about ten to twelve clients a year. But there is nothing inconsistent about these statements. One is about Tenor's clients in Georgia, and the

---

[1] The United States Supreme Court recently granted certiorari to decide whether a defendant raising an unpleaded affirmative defense at summary judgment must show good cause under Federal Rule of Civil Procedure 16(b)(4), or whether an absence of prejudice suffices. *See Younge v. Fulton Jud. Cir. Dist. Att'y*, No. 25-352, ___ S. Ct. ___, 2026 WL 858458 (U.S. Mar. 30, 2026). Whatever standard the Supreme Court applies, the result will be the same here because both were met.

other is about Tenor's business as a whole.  So, we find no error and affirm the district court on these issues.[2]

### C.  Tenor's Unjust-Enrichment Claim

Finally, GunBroker argues the district court should have granted its motion for judgment as a matter of law because Tenor could not pursue an unjust-enrichment claim to recover on a contract voided for illegality.  The work Tenor did under stage two of the agreement can't be "severed" from the illegality of its advisory work at stage one in order to support a claim for unjust enrichment.  We therefore agree with GunBroker that the district court should have granted its motion for judgment as a matter of law on this claim.

"Unjust enrichment is an equitable concept and 'applies when as a matter of fact there is no legal contract . . . , but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for.'" *St. Paul Mercury Ins. Co. v. Meeks*, 508 S.E.2d 646, 648 (Ga. 1998) (quoting *Engram v. Engram*, 463 S.E.2d 12, 15 (1995)).  To recover on a claim for unjust enrichment under Georgia law, a plaintiff must demonstrate: (1) "that the defendant induced or encouraged the plaintiff to provide something of value to the defendant"; (2) "that the plaintiff

---

[2] Because we don't need to decide whether the client-count exemption is an affirmative defense under Georgia law, we deny GunBroker's motion to certify the question to the Supreme Court of Georgia.

provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof"; and (3) "that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." *Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016) (citing *Crook v. Foster*, 775 S.E.2d 286, 289 (2015)).

Recovery on an unjust-enrichment claim "may be prohibited where the nature of the contract itself rendered it entirely void for being in contravention of public policy in its totality." *Remediation Servs. v. Ga.-Pac. Corp.*, 433 S.E.2d 631, 637 (Ga. Ct. App. 1993) (collecting cases). So, as a general rule, "[i]f . . . an express agreement is unenforceable because it violates public policy, the agreement '[cannot] be made legal and binding as an implied contract, by merely praying for a recovery on quantum meruit of a portion of the amount expressly agreed upon.'" *JR Constr./Elec. v. Ordner Constr. Co.*, 669 S.E.2d 224, 226–27 (Ga. Ct. App. 2008) (quoting *Sapp v. Davids*, 168 S.E. 62, 63 (Ga. 1933)).

But there's an exception to the general rule. "[W]here a contract is illegal only in part, recovery is allowed on a quantum meruit basis for the part of the services which was legal." *Five Star Athlete Mgmt., Inc. v. Davis*, 845 S.E.2d 754, 756 (Ga. Ct. App. 2020) (quoting *Remediation Servs.*, 433 S.E.2d at 637). Thus, to determine if a plaintiff can recover on a claim of unjust enrichment under Georgia law when the underlying contract involves illegality, courts conduct a two-step inquiry. First, they ask whether the "nature of the transaction" between the parties is "intrinsically illegal"

such that the contract would be "entirely void for being in contravention of public policy in its totality." *Remediation Servs.*, 433 S.E.2d at 637. If so, recovery is barred on an unjust-enrichment or quantum meruit theory. *See id.*

A transaction is intrinsically illegal where its "object or purpose is illegal" but not where the "illegality is only collateral or remotely connected to the contract." *Five Star Athlete*, 845 S.E.2d at 756 (quoting *Smith v. Saulsbury*, 649 S.E.2d 344, 347 (Ga. Ct. App. 2007)). For example, in *Five Star Athlete*, a contract to provide recruiting services to a student athlete by an unregistered athlete agent was void in its entirety because the contract "was for an illegal thing: for an unlicensed person [ ] to induce [a student athlete] to enter into an agency contract . . . ." *Id.* at 757; *see also JR Constr.*, 669 S.E.2d at 226–27 (holding that contract to provide electrical work by unlicensed electrician was void in its entirety and value of goods and services provided were unrecoverable under a theory of unjust enrichment). By contrast, in *Shannondoah, Inc. v. Smith*, a contract to sell a bar to an unlicensed bar operator was not void in its entirety where it was possible that the bar operator could continue to operate the bar under the seller's existing license and the contract therefore "did not *require* a violation of [law] in order . . . to perform under the contract." 230 S.E.2d 351, 352–53 (Ga. Ct. App. 1976) (emphasis added); *see also Remediation Servs.*, 433 S.E.2d at 637 (contract for dredging services was not inherently illegal where contract was merely voidable at the election of the defendant because of an undisclosed dual agency by one of the parties).

Next, if the nature of the transaction was not intrinsically illegal, courts ask "whether [the] plaintiff requires any aid from the illegal transaction to establish his case" for unjust enrichment. *Five Star Athlete*, 845 S.E.2d at 757 (quoting *Adams v. Trust Co. Bank*, 426 S.E.2d 36, 38 (Ga. Ct. App. 1992)). Thus, a plaintiff can't recover on a claim for unjust enrichment if the claim "depends upon" or "stem[s] from" the illegal transaction. *Nayani v. Hassanali*, 868 S.E.2d 465, 470, 471 (Ga. Ct. App. 2022); *Five Star Athlete*, 845 S.E.2d at 757 (finding that the plaintiff could not recover on a theory of unjust enrichment because "the only evidence proffered by" the plaintiff "to establish his claim [was] evidence of [his] illegal . . . activities").[3]

Tenor cannot recover on its claim for unjust enrichment. First, any contract that "involves" a violation of the Investment Advisers Act is automatically void in its entirety as a matter of law. *See* 15 U.S.C. § 80b-15(b) (providing that "every contract . . . which involves the violation of the [Investment Advisers Act] . . . shall be void [ ] as regards the right of any person who, in violation of [the Investment Advisers Act], shall have made or engaged in the per-

---

[3] GunBroker moved to certify a question to the Supreme Court of Georgia to ask whether the exception to the general rule "accurately reflect[s] Georgia law" and, if it does, to ask about the scope of the exception. Because we don't have a "'substantial doubt' regarding the status of" Georgia law on this issue, we deny the motion. *See Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1340 (11th Cir. 2019) (quoting *Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1274–75 (11th Cir. 2013)).

formance of any such contract"). No party disputes that the performance of stage one necessarily required "an illegal thing": for an unlicensed investment adviser to provide investment advice. *Five Star Athlete*, 845 S.E.2d at 757. Indeed, this was the basis on which the district court, at summary judgment, rescinded the agreement in its entirety. Thus, although the stage-two services were not themselves illegal, the contract was "entirely void for being in contravention of public policy in its totality." *Remediation Servs.*, 433 S.E.2d at 637. Tenor therefore cannot recover for its stage-two services on an unjust-enrichment theory.

Second, Tenor cannot "establish [its] case" for unjust enrichment under stage two without "any aid" from the unlawful part of the agreement—the investment advice and valuation under stage one. *Five Star Athlete*, 845 S.E.2d at 757. To succeed on its claim, Tenor had to show that GunBroker induced or encouraged Tenor to provide something of value, that Tenor provided a benefit to GunBroker with the expectation that GunBroker would be responsible for the cost thereof, and that GunBroker knew of the benefit being bestowed upon it by Tenor and either affirmatively chose to accept the benefit or failed to reject it. *See Campbell*, 790 S.E.2d at 73.

Here, the "benefit" or "thing of value" that Tenor provided to GunBroker was identifying, pitching, and negotiating a potential ESOP transaction under stage two. The stage-one services were an integral part of this process. Butler testified that every lender

Tenor approached for the ESOP deal received the financing memorandum that Tenor prepared. That financing memorandum included Tenor's stage-one valuation and financial analysis as part of the pitch for the deal. Tenor used the work product generated under stage one to identify, pitch, and negotiate an ESOP deal under stage two. In other words, Tenor could not generate the benefit or value it provided to GunBroker under stage two without incorporating the work it performed under stage one. The stage-one work was also a key reason why GunBroker "induced or encouraged [Tenor] to provide something of value" to GunBroker. *Id.* The structure of the agreement was that GunBroker would only decide to go forward with stage two based on the investment advice provided under stage one. And Butler testified that the agreement was intentionally structured that way so that "if our client receives the work product in that first stage and sees the structuring, recommendations that we've come up with, that they're agreeing that they're going to work with us" on the stage-two financing raise and stage-three closing.

In short, the illegal investment advice provided under stage one was both an integral part of the "benefit" provided under stage two and a key reason why GunBroker "induced or encouraged" Tenor to provide that benefit. *Id.* Contrary to what Tenor argues, then, we disagree that it doesn't require any aid from its unlawful investment-advisory services to prove its claim for unjust enrichment under stage two. "[T]he only evidence" that Tenor had to establish its claim—evidence of its stage-two services—necessarily

involved "evidence of [its] illegal" stage-one services. *Five Star Athlete*, 845 S.E.2d at 757. The district court therefore should have granted GunBroker judgment as a matter of law on Tenor's unjust-enrichment claim.[4]

### CONCLUSION

In sum, we affirm the summary judgment for Tenor on GunBroker's Georgia Securities Act claim. But we reverse the summary judgment for Tenor on GunBroker's breach-of-fiduciary-duty claim and remand for further proceedings. And we reverse the judgment for Tenor on its unjust-enrichment claim and remand for the district court to enter judgment for GunBroker on that claim. We leave to the district court's discretion GunBroker's request to realign the parties to their original positions.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

---

[4] GunBroker raises two other issues related to this claim: that the district court gave an improper instruction to the jury and that the district court should have investigated potential juror misconduct following the trial. Because we agree with GunBroker that the district court should have granted judgment as a matter of law on the only claim it didn't prevail on at trial, we don't reach either issue. And because we don't reach the jury instruction issue, GunBroker's motion to certify the issue to the Supreme Court of Georgia is denied as moot.